IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOE DON DEMONTINEY,<br><br>Demontiney. | Cause No. CR 24-79-GF-BMM<br><br>ORDER |

## INTRODUCTION

The Government charged Joe Don Demontiney ("Demontiney") by Superseding Indictment with six counts of drug trafficking and gun possession. Count 1 charges Demontiney with possession with intent to distribute controlled substances in violation of Title 21 U.S.C. § 841(a)(1). Counts 2 and 3 charge Demontiney with possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18 U.S.C. § 924(c)(1)(A)(i). Counts 4-6 charge Demontiney with prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 79.) Demontiney's motion to suppress addresses the charges of possession with intent to distribute and prohibited person in possession of a firearm and ammunition. (Doc. 106.)

1

Demontiney's Motion to Suppress alleges that law enforcement unlawfully entered and searched his residence without probable cause or a valid search warrant. Demontiney seeks to exclude any evidence obtained as a byproduct of an illegal search. (*Id.* at 2–4.) The Government opposes the motion. The Government contends that a valid arrest warrant, exigent circumstances, and the subsequently obtained search warrant from the Chippewa Cree Tribal Court justified the entry. The Government further argues that law enforcement acted in good faith. (Doc. 127 at 2–4, 16–18.) The Court denies the motion.

## BACKGROUND

Officers with the Chippewa Cree Law Enforcement ("CCLE") received a report from a citizen on Eaglewood Street in the Bonneau housing area of the Rocky Boy's Indian Reservation that Demontiney and Pete Demontiney were at 95 Eaglewood Street and acting unusual the morning of August 11, 2024. (Doc. 106 at 2; Govt. Ex. 1 at 1.) The resident also sent photos of a vehicle present at the residence with its license plates removed. (*Id.*) CCLE officers knew of an outstanding Chippewa Cree Tribal Court arrest warrant for Demontiney. (Id. at 3; Govt. Ex. 1 at 1–2.) Officers had also received multiple reports of suspected drug activity at 95 Eaglewood Street before the incident. (*Id.*)

Multiple CCLE officers arrived at approximately 9:09 A.M. at 95 Eaglewood Street and encountered a Dodge pickup parked in front with four occupants,

2

including Larissa Denny. Denny had an active warrant for her arrest. (*Id.* at 3; Govt. Ex. 1 at 2.) CCLE officers observed drug paraphernalia on Denny's person and in the pickup. (*Id.*) Geri Calvin-Murie walked out of the residence. (*Id.* at 3–4; Govt. Ex. 1 at 2.) Calvin-Murie denied that Demontiney was inside. (*Id.*) CCLE officers had conflicting information based on statements from other individuals at the scene and ongoing surveillance. (*Id.*) CCLE Chief of Police Steve Henry returned to the CCLE station to prepare a search warrant application.

CCLE officers conducting surveillance observed smoke coming from the chimney of the residence despite warm weather in the month of August. (*Id.* at 5; Govt. Ex. 1 at 3.) CCLE officers at the scene contacted Chief Henry regarding the smoke. Chief Henry directed law enforcement to enter the residence based on concerns of evidence destruction. (*Id.*) CCLE officers arrested Demontiney on his outstanding tribal warrant upon entry. (*Id.*) CCLE officers also retrieved what appeared to be an artillery shell and a burnt ledger from the wood stove. (*Id.*) CCLE officers noticed debris from the ceiling while conducting a security sweep of the residence. (*Id.*; Govt. Ex. 1 at 3–4.) CCLE officers observed a gap in the entrance to the crawl space above the hallway. (*Id.*) CCLE Officer Parisian opened the ceiling tile to ensure no one else was hiding in the crawl space. (*Id.*) Officer Parisian saw drug paraphernalia and a firearm in the crawl space. (*Id.*)

CCLE officers secured the scene, obtained a search warrant from the tribal

3

court, and subsequently conducted a search of the residence. (*Id.* at 6; Govt. Ex. 1 at 4–5; Govt. Ex. 3 at 12–14.) Evidence recovered included suspected drugs, drug paraphernalia, firearms, ammunition, and several cell phones. (*Id.*) The Government charged Demontiney by superseding indictment on April 3, 2025, including counts for possession with intent to distribute controlled substances and being a prohibited person in possession of a firearm and ammunition. (Doc. 106 at 1.) Demontiney moves to suppress all evidence seized on grounds that law enforcement's entry and subsequent search of his residence violated the Fourth Amendment. (*Id.* at 1–2.)

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures by the government. U.S. Const. amend IV. The Fourth Amendment requires law enforcement to have probable cause, and in most cases, to obtain a warrant issued by a court before searching or taking property. *Id.* A defendant has the ultimate burden of proof on a Fourth Amendment motion to suppress. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). The Government has the burden of providing "specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct" to justify reasonable suspicion. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000); *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The Fourth Amendment permits warrantless entry when exigent

4

circumstances exist, such as when a threat of imminent destruction of evidence exists. *Kentucky v. King*, 563 U.S. 452, 462 (2011); *see also Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

## ANALYSIS

### I. CCLE Conducted a Lawful Search of Demontiney's Residence.

The Court addresses separately the issues of probable cause, the existence of exigent circumstances, and the scope of the security sweep.

#### A. CCLE Had Probable Cause

Demontiney contends that police entered his home without a search warrant and without probable cause that a crime had been committed or that he was inside the residence. (Doc. 106 at 2–5, 7–10.) Demontiney asserts that the existence of an arrest warrant did not support the entry. Demontiney separately argues that the exigent circumstances exception to the warrant requirement does not apply. (*Id.*)

The Ninth Circuit has determined that officers may enter a home to execute an arrest warrant if they have a reasonable belief, founded on probable cause, that the subject of the warrant is inside. *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002) ("The 'reason to believe' standard is synonymous with probable cause."). The Court determines that CCLE officers had probable cause based on a reasonable belief that Demontiney remained inside the residence under the totality of the circumstances. The Chippewa Cree Tribal Court had issued an active arrest

5

warrant for Demontiney at the time CCLE approached 95 Eaglewood Street on August 11, 2024. (Doc. 106 at 5.) The warrant, dated June 26, 2024, alleged that Demontiney had failed to check in with the Adult Probation Department and had failed to pay a $200 court-ordered fine. Both omissions violate the terms of Demontiney's probation. (Govt. Ex. 2 at 1–3.) Chief Henry documented that Demontiney "had an active warrant for his arrest" in his incident report. (Govt. Ex. 1 at 2.) CCLE officers confirmed the existence and validity of the warrant before entering the residence. (Govt. Ex. 1 at 2.)

CCLE officers also received a report on August 11, 2024, regarding suspicious activity at 95 Eaglewood St.: "Joe Don and Pete Demontiney were acting strange early today." (Doc. 106 at 2; Govt. Ex. 1 at 1.) The informant also provided "pictures of a silver sedan that had the license plate removed both in front of and leaving the residence." (Doc. 106 at 2; Govt. Ex. 1 at 1.) Prior calls and reports linked Demontiney's home address to 95 Eaglewood St. and indicated that law enforcement "had been receiving numerous reports that there was drug activity at the Joe Don Demontiney residence for quite some time." (*Id.* at 3; *Id.* at 1–2.)

Upon arrival at 9:09 A.M, CCLE officers encountered four people in a parked truck. (*Id.*) One of the passengers told Officer Parisian that "they were waiting for a friend to come out" and, when asked, responded that the friend was "Joe Don." (*Id.*) Demontiney "had an active warrant for his arrest." (*Id.*) Another person, Geri

6

Calvin-Murie, a woman with a drug-related history, later walked out of the residence. Calvin-Murie claimed that Demontiney was not inside. Officers "were confident Joe Don Demontiney was inside the residence" based on witness statements and previously gathered intelligence. (*Id.* at 4; Govt. Ex. 1 at 2.)

The Chippewa Cree Housing Authority later corroborated the CCLE's belief that Demontiney lived at 95 Eaglewood St. (Govt. Ex. 4 at 1–2.) The Chippewa Cree Housing Authority listed Demontiney as "head of household" for 95 Eaglewood St. in an eviction notice. (Govt. Ex. 4 at 1–2.) Moreover, both the police incident report and the search warrant application named this address as Demontiney's residence. (Govt. Ex. 1 at 1, 2; Govt. Ex. 3 at 1.) Chief Henry summarized this information in the affidavit in support of a search warrant: "Law Enforcement has been receiving consistent information reporting frequent vehicle and human traffic to the residence at 95 Eaglewood Street, Box Elder, MT, occupied by Joe Don Demontiney." (Govt. Ex. 3 at 6.)

Calvin-Murie's one statement to officers at the scene admittedly denied Demontiney's presence. The totality of circumstances, including the address history, the neighbor's and witnesses' reports, and the presence of acquaintances actively seeking him at the location, however, supports the officers' reasonable belief that Demontiney was in the residence at the time of the entry. (Govt. Ex. 1 at 2–3.)

### B. The Exigency Exception Applies to CCLE's Entry into

**Demontiney's House**

Demontiney argues that the exigency exception fails to justify the warrantless entry into his residence because law enforcement lacked probable cause that a crime was being committed or that evidence was at risk of destruction. (Doc. 106 at 7–9.) Demontiney contends that the observation of smoke coming from the chimney alone fails to establish sufficient probable cause for the destruction of evidence, especially when coupled with weak or uncorroborated reports of supposed drug activity and conflicting evidence regarding his presence at the residence. (*Id.*)

The U.S. Supreme Court allows warrantless entry where exigent circumstances exist, including the imminent destruction of evidence. *Kentucky v. King*, 563 U.S. 452, 462 (2011). The facts present satisfy the exigency exception. CCLE officers had an active arrest warrant for Demontiney. CCLE officers possessed probable cause to enter the residence due to Demontiney's likely presence at his residence, the reports of suspicious activity to CCLE officers at the residence, and the presence of the five people outside the residence, some of whom possessed drug paraphernalia. (Doc. 127.) Officers observed smoke coming from the residence's chimney on a warm August day. (Govt. Ex. 3 at 6.) CCLE officers reasonably believed evidence was being destroyed inside the residence based on their knowledge of Demontiney's drug history, multiple reports of drug activity at the house, and paraphernalia already observed at the scene. (*Id.*) Exigent

8

circumstances existed to support immediate entry to prevent the imminent destruction of relevant evidence, as recognized in *Kentucky v. King*, 563 U.S. at 462. CCLE's actions satisfied two independent legal standards permitting entry.

## II. CCLE Conducted a Lawful Security Sweep

Demontiney argues that the "security sweep" conducted by officers after his arrest was unlawful because police lacked any specific and articulable facts suggesting another person was present in the residence who could pose a danger to officers. (Doc. 106 at 10–11.) Demontiney contends that the protective sweep served as a pretext, as it was performed only after Demontiney already had been secured and taken into custody and not based on a reasonable belief of any ongoing threat. (*Id.*) Demontiney further asserts that any evidence discovered in plain view during this sweep should be suppressed because the sweep was not properly limited in scope or duration as required by *Maryland v. Buie*, 494 U.S. 325, 335–36 (1990). (*Id.*)

The U.S. Supreme Court permits a "protective sweep" of a residence where officers possess a reasonable belief, grounded in specific and articulable facts, that the area to be swept harbors an individual posing a danger. *Maryland v. Buie*, 494 U.S. at 337. The protective sweep must be limited in scope and duration to dispel the reasonable suspicion of danger and last no longer than necessary to complete the arrest and depart the premises. *Id.* at 335–36. Several specific and articulable facts suggesting a risk to officer safety supported the CCLE's security sweep.

9

At the time of entry and arrest, CCLE officers knew Demontiney's residence had been associated with ongoing drug activity, had received a tip that Demontiney and Pete Demontiney had been at the home and "acting strange early today," and had reports of frequent visits by people suspected of drug involvement. (Doc. 106 at 2–3; Govt. Ex. 1 at 1–2.) CCLE officers found a Dodge pickup outside the residence with four occupants upon arrival, including a person with an active warrant and drug paraphernalia. These factors suggested that others potentially connected to criminal activity still could be in the residence. (Govt. Ex. 1 at 2–3.)

CCLE officers noticed loose drywall debris underneath the attic door after having arrested Demontiney. CCLE officers reasonably interpreted this information as "indicating someone could possibly be hiding in the attic," and prompted CCLE officers to check the attic to verify that no one else was present who might pose a danger. (Govt. Ex. 1 at 4.) CCLE officers limited the scope and duration of the sweep as the officers searched only places where a person could hide and left the premises promptly after verifying no threats remained. These facts fulfill *Buie*'s requirements. (*Id.*) CCLE officers possessed an objectively reasonable belief to justify a security sweep to ensure that no threats to their safety existed under these circumstances.

### III.  Search Warrant was Not Tainted

Demontiney argues that observations and information obtained by CCLE during the initial unlawful, warrantless entry and security sweep of his home tainted,

10

at least in part, the subsequent search warrant issued by the tribal court. (Doc. 106 at 7–8, 11.) Demontiney contends the Court first must excise these "tainted" portions of the warrant affidavit. Demontiney argues that the remaining facts in the affidavit fail to establish independently probable cause to search the residence. (*Id.*) Demontiney claims that the affidavit's untainted content amounts to little more than vague and uncorroborated reports of drug activity, which falls short of the Fourth Amendment's standard for probable cause, rendering evidence seized from the warrant invalid. (*Id.*)

The U.S. Supreme Court held that evidence observed in plain view during lawful police activity may be seized without a warrant. *Horton v. California*, 496 U.S. 128, 135 (1990); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). The U.S. Supreme Court directs reviewing courts to excise the illegally obtained information when an affidavit supporting a search warrant contains such information. *United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014); *see also United States v. Heckenkamp*, 482 F.3d 1142, 1149 (9th Cir. 2007). The reviewing courts must determine whether the remaining, untainted facts prove sufficient to support probable cause absent the illegally obtained information. *Id.* The exclusionary rule does not apply if officers acted in objectively reasonable reliance on a warrant issued by a neutral magistrate, even if the warrant is later found invalid. *United States v. Leon*, 468 U.S. 897, 922 (1984).

11

The search warrant affidavit contained abundant independent information establishing probable cause that evidence of criminal activity would be found at 95 Eaglewood Street. The affidavit detailed the following facts: (1) numerous prior reports of drug activity and suspicious behavior at that address, known to be occupied by Demontiney; (2) a citizen's report on August 11, 2024, that "Joe Don and Pete Demontiney were acting strange early today" along with photographic evidence of a vehicle with removed license plates at the property (Govt. Ex. 3 at 6; Doc. 106 at 2–3); (3) the known association of Demontiney's criminal drug and firearm offenses, including his status as a convicted felon (Govt. Ex. 3 at 5–6; Govt. Ex. 1 at 1–2); (4) the presence of known drug users outside the residence, one of whom was found to possess drug paraphernalia; (5) witness statements that they were waiting for Demontiney to come out (Govt. Ex. 1 at 2–3; Govt. Ex. 3 at 6); and (5) corroboration from the Chippewa Cree Housing Authority that Demontiney resided at the searched property (Govt. Ex. 4 at 1–2).

CCLE officers did not derive these facts from the initial entry. These facts remained available to CCLE before the sweep and CCLE properly included them in the warrant application. The inclusion of independent information satisfies probable cause, beyond any items found inside during the warrantless sweep. The facts showed a fair probability that contraband and evidence of crime were present in the home. The search warrant issued by the Chippewa Cree Tribal Court was not tainted

12

and had been validly issued. CCLE officers properly executed the warrant.

### A. Cell Phone Seizure was Warranted

Demontiney argues that the search warrant issued by the Chippewa Cree Tribal Court did not explicitly authorize the seizure of cell phones from his residence, and that CCLE exceeded the scope of the warrant by taking them. (Doc. 106 at 12.) Demontiney points out that, while the warrant lists items such as "narcotic drugs, firearms, ammunition, books, ledgers or similar items used to document drug activity," it makes no mention of cell phones or related electronic devices, nor does it authorize their seizure. *Id.* Demontiney contends that this omission proves fatal under the Fourth Amendment's particularity requirement, which prohibits general searches and requires warrants to specifically describe the items to be seized. *Id.* Consequently, Demontiney asserts, any evidence derived from the warrantless seizure or subsequent search of his cell phones must be suppressed. (*Id.*; citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).

The Government conceded at the hearing on the motion that it did not intend to use the cell phones, and the information contained in the cell phones in its prosecution of Demontiney. The Court will exclude the cellphones seized in the search and any information contained on the cell phones from use in trial in this matter absent further order from the Court.

## CONCLUSION

Law enforcement's entry and search of the Demontiney residence complied with the Fourth Amendment. CCLE had an active arrest warrant for Demontiney. CCLE reasonably believed that Demontiney was present at the residence based upon substantial evidence, including reports from residents, prior intelligence, and official records. Exigent circumstances further justified the warrantless entry due to CCLE's reasonable fear that evidence was being destroyed. CCLE limited the protective sweep of the residence. Specific facts indicating officer safety risks supplied independent probable cause to support the limited safety sweep and supported the subsequent search warrant issued by the tribal court.

Accordingly, **IT IS HEREBY ORDERED** that Demontiney's Motion to Suppress (Doc. 105.) is **DENIED.**

**DATED** this 15th day of September 2025.

_____
Brian Morris, Chief District Judge
United States District Court